WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alice Ann Shepherd,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-16-02699-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the appeal of Plaintiff Alice Ann Shepherd, which challenges the Social Security Administration's decision to deny benefits. (Doc. 15.) For the reasons set forth below, this Court affirms.

## BACKGROUND

On October 16, 2012, Ms. Alice Shepherd filed an application for supplemental security income, alleging a disability onset date of March 1, 2009.[1] (Tr. 14.) Her claim was initially denied on January 31, 2013, and it was denied again upon reconsideration on

---

[1] This is not the first time Ms. Shepherd applied for and was denied supplemental security income. (Tr. 120.) Generally, administrative res judicata binds an ALJ to the findings of the earlier ALJ's opinion, unless a "changed circumstance indicating a greater disability" is present. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). The ALJ found, and neither party contests, that changed circumstances justified denying the earlier ALJ's opinion preclusive effect in this case. (Tr. 14–15.) Specifically, the ALJ explained that Ms. Shepherd's change in age category justified rebutting the presumption of res judicata. (Tr. 15.) Therefore, the ALJ applied the typical five-step sequential evaluation of disability.

August 7, 2013. (*Id.*) Ms. Shepherd then filed a written request for a hearing and she testified before Administrative Law Judge ("ALJ") Sheldon Zisook on October 15, 2014. (Tr. 14, 27.) On December 5, 2014, the ALJ issued a decision finding Ms. Shepherd not disabled. (Tr. 27.)

In evaluating whether Ms. Shepherd was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[2] (Tr. 15–16.) At step one, the ALJ found that Ms. Shepherd had not engaged in substantial gainful activity since October 16, 2012, her application date.[3] (Tr. 25.) At step two, the ALJ determined that Ms. Shepherd suffered from the following severe impairments: history of right tibial fracture, status post ORIF surgery, and an affective disorder. (Tr. 17.) At step two, the ALJ also determined that Ms. Shepherd's asthma, COPD, back and neck impairments are non-severe. (*Id.*) At step three, the ALJ determined that none of Ms. Shepherd's severe

---

[2] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal quotation marks and citations omitted).

[3] For Supplemental Security Income ("SSI") claims, the relevant period for benefits runs from the date the claimaint files her application for benefits to the date of the ALJ's decision. *See Grey v. Barnhart*, 123 F. App'x 778, 779–80 (9th Cir. 2005) (outlining the relevant period for SSI claims). Neither party contests that this is the relevant date for the five-step analysis.

impairments equaled or met the severity of any of the Social Security Administration's listed impairments. (*Id.*)

At that point, the ALJ reached step four and made a determination of Ms. Shepherd's residual functional capacity ("RFC"),[4] concluding that while Ms. Shepherd could not perform her past relevant work as a warehouse worker, she could "perform light work as defined in 20 CFR 404.967(b), with unlimited lifting and carrying within light lifting limits, no climbing ladders, ropes, and scaffolds, and occasional climbing ramps and stairs, unlimited balancing, and occasional stooping, kneeling, crouching, and crawling." (Tr. 19, 25.)

The Appeals Council declined to review the decision. (Tr. 1–3.) Ms. Shepherd filed the complaint underlying this action on August 10, 2016 seeking this Court's review of the ALJ's denial of benefits. (Doc. 1.)

**DISCUSSION**

**I. Standard of Review**

A reviewing federal court need only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).[5] A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant

---

[4] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96–8p (July 2, 1996).

[5] In her opening brief, the Claimant states that the ALJ's opinion "did not include all of her severe ailments." Doc. 15 at 10. The Claimant failed to set forth which additional impairments should have been considered severe. This conclusory statement is insufficient to preserve this issue on appeal. *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 (9th Cir. 1996) ("The summary mention of an issue in a footnote, without reasoning in support of the appellant's argument, is insufficient to raise the issue on appeal."). Further, the ALJ analyzed the Claimant's other impairments and found that they were not individually severe while indicating that he would consider them in determining the Claimant's condition as a whole. (Tr. 17−19.)

evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). However, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.' " *Id.* (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Nor may the Court "affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

**II.    Analysis**

    **A.    The ALJ Properly Rejected Dr. Muse's Medical Opinions**

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Although this is the general rule, an ALJ may properly reject the opinion of a treating physician in favor of a non-examining physician in certain circumstances. If the opinion of a treating physician is not contradicted by another physician, then the ALJ must provide clear and convincing reasons for rejecting the opinion. *Id.* However, if a treating physician's medical opinion is contradicted by another physician, then the ALJ can reject his opinion for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 831. In this case, the opinion of the treating physician was contradicted by another physician, and thus the second standard applies.

Dr. Muse opined that Ms. Shepherd had marked limitations in her ability to remember locations and work-like procedures, understand and remember instructions, perform activities on a schedule, maintain normal attendance, sustain ordinary routines, ask questions, and be aware of safety hazards. (Tr. 463–65.) He also found that she was moderately limited in several other aspects of daily functioning, and that she suffered from post-tramatic stress disorder, bipolar disorder, and an anxiety disorder. (*Id.*) The ALJ in this case rejected Dr. Muse's medical opinion because he determined that it was 1) inconsistent with the objective medical record, 2) inconsistent with Dr. Muse's own treatment notes, and 3) inconsistent with the findings of Dr. Geary.

An ALJ may discount the opinion of a treating physician if it is inconsistent with the objective medical record as whole. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings.") (internal citations omitted). The ALJ specifically noted that Ms. Shepherd's medical records explained that Ms. Shepherd "show[ed] improved mental functioning and overall moderate symptomology in the presence of pharmacological management, and no more than moderate symptoms and limitations in mental functioning." (Tr. 25.) He also summarized the entirety of Ms. Shephard's medical history in the first half of his opinion, noting that with medication, Ms. Shepherd appeared to be stable. (Tr. 25.) By Ms. Shepherd's own admission, as long as she takes her medication, she is "fine." (Tr. 25, 458.) She "was also assessed with a GAF of 55, consistent with no more than moderate symptoms and limitations in social and occupational functioning" even when she was not medicated.[6] (Tr. 24, 410.) Therefore, there was substantial evidence for the ALJ's finding that the objective medical evidence

---

[6] The ALJ's summary of Ms. Shepherd's medical record and subsequent citations to inconsistencies between Dr. Muse's opinion and the medical record does not constitute impermissible "second-guess[ing]" of a competent medical professional. (Doc. 15 at 13.) The ALJ did not substitute his own judgment for Dr. Muse's or make his own medical findings. Rather, the ALJ properly considered the record as a whole, and determined that Dr. Muse's medical findings were contrary to the findings of other competent medical professionals as well as the objective medical evidence and his own treatment notes.

did not support Dr. Muse's findings of disability.

An ALJ may also consider inconsistencies between the treating physician's opinion and his treatment notes while weighing his opinion. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (affirming an ALJ's decision to discredit the findings of a treating psychologist due to inconsistencies between his opinion and his treatment notes). Dr. Muse treated Ms. Shepherd at a facility called "Valle del Sol" from 2013–2014. (Tr. 25.) During that time period, his treatment notes indicate that while her speech was rapid and her thoughts were disorganized during her initial visit, she appeared to improve over time while on medication. (Tr. 25, 413, 420, 429, 439, 449, 458.) Per Dr. Muse's treatment notes, Ms. Shepherd's main complaint during this time period was continued trouble "staying asleep," but otherwise she "continu[ed] to respond to her medication positively without any side effects." (Tr. 24, 449.) Although Dr. Muse opined that Ms. Shepherd has bipolar disorder in his questionnaire, it is unclear that Dr. Muse ever actually diagnosed Ms. Shepherd with bipolar disorder in his treatment notes. (Tr. 463.) As the ALJ noted, Dr. Muse's treatment notes summarized Ms. Shepherd's continuous improvement through medication and counseling, and were therefore inconsistent with the level of disability Dr. Muse outlined in his questionnaire. (Tr. 25.)

The ALJ properly contrasted Dr. Geary's findings with Dr. Muse's findings. *See Batson*, 359 F.3d at 1195 ("When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict."). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* However, it may be sufficient when "consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Dr. Geary examined Ms. Shepherd in January of 2013, and ultimately determined that she suffered from depression, nicotine dependence, and remote history of physical abuse. (Tr. 23, 305.) Dr. Geary found that while Ms. Shepherd's "basic comprehension and recall for simple

material was adequate," her "low intellectual capacity" required her to receive frequent reminders "about complicated job details." (Tr. 23, 303, 306.) The ALJ properly determined that this opinion was supported by the medical record, specifically Ms. Shepherd's continued improvement and stability while being treated at Valle del Sol. (Tr. 23, 25.) Therefore, he did not err in giving it more weight than Dr. Muse's opinion. The ALJ properly weighed the credibility of the physicians in this case, and thus his findings are affirmed.

### B. The ALJ Gave Sufficient Reasons For Rejecting Ms. Shepherd's Testimony

Once a claimant establishes that objective medical evidence illustrates an impairment that could reasonably cause the symptoms alleged, "and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.' " *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 2006)). This is the most stringent standard required in social security cases. *Id.* In determining whether the claimant's testimony regarding her symptoms is credible, the ALJ can consider a multitude of factors, including:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen*, 80 F.3d at 1284. The ALJ can also consider "the claimant's prior work record . . . and observations by treating and examining physicians and third parties about the claimant's symptoms and their effects." *Id.* at 1285.

#### 1. Ms. Shepherd's Inconsistencies with the Medical Record

The ALJ properly considered the inconsistencies between Ms. Shepherd's testimony and her medical record while assessing her credibility. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor

material was adequate," her "low intellectual capacity" required her to receive frequent reminders "about complicated job details." (Tr. 23, 303, 306.) The ALJ properly determined that this opinion was supported by the medical record, specifically Ms. Shepherd's continued improvement and stability while being treated at Valle del Sol. (Tr. 23, 25.) Therefore, he did not err in giving it more weight than Dr. Muse's opinion. The ALJ properly weighed the credibility of the physicians in this case, and thus his findings are affirmed.

### B. The ALJ Gave Sufficient Reasons For Rejecting Ms. Shepherd's Testimony

Once a claimant establishes that objective medical evidence illustrates an impairment that could reasonably cause the symptoms alleged, "and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.' " *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 2006)). This is the most stringent standard required in social security cases. *Id.* In determining whether the claimant's testimony regarding her symptoms is credible, the ALJ can consider a multitude of factors, including:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen*, 80 F.3d at 1284. The ALJ can also consider "the claimant's prior work record . . . and observations by treating and examining physicians and third parties about the claimant's symptoms and their effects." *Id.* at 1285.

#### 1. Ms. Shepherd's Inconsistencies with the Medical Record

The ALJ properly considered the inconsistencies between Ms. Shepherd's testimony and her medical record while assessing her credibility. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor

that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Furthermore, "evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (internal quotation marks omitted); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). However, "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017.

The ALJ noted that although Ms. Shepherd testified that she experienced "constant and debilitating pain," her medical record indicated that as of July 3, 2014, Ms. Shepherd "demonstrated good rehabilitation potential" and "appeared to be in no acute distress, with appropriate mood and affect." (Tr. 22, 399–400.) He also noted that in from March to July of 2014, Ms. Shepherd appeared to give conflicting reports regarding the level of pain she was in. (Tr. 22.) For example, in March of 2014, she claimed that her medication was not "taking the edge off," but simultaneously claimed that when she took her medication, the pain fell to a "5/10." (Tr. 22, 380.) By July of 2014, Ms. Shepherd reported that her "medications were working well for her." (Tr. 22, 372.) The ALJ did not err in considering these inconsistencies while assessing Ms. Shepherd's credibility regarding her level of pain.

The ALJ also cited to inconsistencies within the record to weigh the credibility of Ms. Shepherd's assertions regarding her mental health. For example, Ms. Shepherd testified that she has trouble remembering things, often blacks out in a rage, and her medication only helps her "some." (Tr. 21, 45–46.) Yet Ms. Shepherd consistently

reported improving mental health from November of 2014 onward. (Tr. 24, 413, 420, 429, 439.) Of note, she repeatedly affirmed that her medication was working, and that she was fine "as long as I take my medications." (Tr. 25, 458.) Ms. Shepherd informed her doctor that by February of 2014, her chief complaint was "that she was waiting for SSI benefits, and that being denied SSI previously was very irritable to her." (Tr. 24, 429, 439.) The ALJ did not err in weighing these inconsistencies against Ms. Shepherd's credibility.

### 2. Considering Ms. Shepherd's Illicit Drug Use and Noncompliance With Treatment

The ALJ also noted that Ms. Shepherd appeared to be using illicit drugs during the period of disability. At one point, Ms. Shepherd informed her medical provider that she used heroin or morphine daily, drank heavily, and routinely used marijuana. (Tr. 406.) The ALJ cited to Ms. Shepherd's continued illicit drug use as a factor for discrediting her testimony. (Tr. 24.) He also noted that Ms. Shepherd told her doctors that she "doubled up" on her Vicodin prescription on occasion. (Tr. 24, 322.) At that point, Ms. Shepherd's therapist felt it necessary to discuss substance abuse as well as the importance of taking medications only as prescribed with Ms. Shepherd. (Tr. 24, 322.)

An ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" while weighing testimony. *Smolen*, 80 F.3d at 1284. Therefore, the ALJ did not err in considering Ms. Shepherd's decision to abuse her pain medication while weighing her credibility. Furthermore, given that any of the illegal drugs Ms. Shepherd reported ingesting on a regular basis could alter her perceptions and mood, it was not error for the ALJ to consider that their continued use could have a negative impact upon her reliability as a witness. *See generally Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (permitting the ALJ to consider the claimant's lack of candor regarding his alcohol use when analyzing credibility).

/ / /

### 3. Ms. Shepherd's Work History

The ALJ properly considered Ms. Shepherd's work history during his credibility analysis. *See Marsh v. Colvin*, 792 F.3d 1170, 1174 n. 2 (9th Cir. 2015) ("We reject Marsh's contention that the ALJ's reference to her work history was improper."); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (permitting an ALJ to weigh a claimant's "spotty" work history against her credibility). Ms. Shepherd reported that "the longest she had ever worked for a single-employer was one year with McDonald's." (Tr. 23, 303–04.) It was not error for the ALJ to weigh her poor employment record as evidence of "low motivation for work activity, which does not bolster her credibility overall." (Tr. 23.)

### 4. Ms. Shepherd's Daily Activities

Ms. Shepherd asserts that the ALJ erred in considering her daily activities as weighing against her credibility. "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen*, 80 F.3d at 1284 n.7. Ms. Shepherd reported that "she spends much of an average day lying down in front of the TV." (Tr. 19, 42.) She is also able to microwave her meals. (Tr. 19, 43.) However, "she is unable to clean the house" and she relies on her son for assistance throughout her daily life. (Tr. 19, 43.) Nothing about this testimony is inconsistent with the level of discomfort Ms. Shepherd alleges. Furthermore, none of these activities are easily transferable to a work place setting. Therefore, to the extent that the ALJ did consider Ms. Shepherd's daily activities as inconsistent with her testimony, he erred.

Once it has been determined that an ALJ made an error during the review of a

claimant's file, the next step is to determine whether the error was prejudicial. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining that an error is not prejudicial if "the ALJ's decision remains legally valid, despite such error.") Ninth Circuit precedents "do not quantify the degree of certainty needed to conclude that an ALJ's error was harmless." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). Generally, if "there remains 'substantial evidence supporting the ALJ's conclusions on ... credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such [error] is deemed harmless and does not warrant reversal." *Carmickle*, 533 F.3d at 1162 (quoting *Batson*, 359 F.3d 1190, 1197 (9th Cir. 2004).

The ALJ's error here was not prejudicial, and thus there is no need to remand the case. The three preceding sections outline other "specific, clear and convincing reasons" for discrediting Ms. Shepherd's testimony. *Garrison v. Colvin*, 759 F.3d at 1014–15. Therefore, despite the ALJ's error in discrediting Ms. Shepherd's testimony based on her daily activities, substantial evidence still supported the ALJ's ultimate decision on her credibility. The ALJ's determination regarding Ms. Shepherd's credibility is affirmed.

### C. Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Ms. Shepherd contends that the ALJ erred because he dismissed the lay testimony of her son, Eric Archer, for inadequate reasons, and failed to address a statement made by a Social Security Field Office employee.

The ALJ did not err in rejecting Mr. Archer's testimony. "One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Lewis*, 236 F.3d at 511. The ALJ noted that Mr. Archer "endorsed the Claimant's subjective complaints including chronic pain, stress and anxiety," and again noted that the objective medical evidence did not support the extent of Ms. Shepherd's alleged limitations. (Tr.

25, 247–254.) This was a legitimate reason to discounting Mr. Archer's testimony, and thus the ALJ did not err.

A Social Security Field officer, Mr. B. Stump, noted that Ms. Shepherd "appeared to be unstable mentally" and required assistance from a friend while filling out her application for benefits in October of 2012. (Tr. 206.) The ALJ did not address this statement in his analysis. While an ALJ "may use evidence from 'other sources,' as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function," it is not apparent that an ALJ is required to do so. S.S.R 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006). Ms. Shepherd does not cite to any authority supporting the proposition that the ALJ had to address the field officer's observations. To the contrary, an ALJ "need not discuss all evidence presented." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393 1394–95 (9th Cir. 1984) (citation omitted). He need only explain why "specific probative evidence has been rejected." *Id.* Mr. Stump encountered Ms. Shepherd on one occasion, for a brief period of time as she filed out an application for social security with a friend. (Tr. 206–208.) He is neither a medical professional nor a close personal relation that would have "special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." S.S.R. 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006). Therefore, it is unsurprising that the ALJ did not determine that Mr. Stump's observations were particularly probative, and thus it is not apparent that failing to consider them constituted an error.[7]

---

[7] Even assuming the ALJ did err in failing to consider Mr. Stump's observations, such an error would not be prejudicial. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) ("Turning to the case at hand, we must consider whether the ALJ's failure to discuss the testimony from Molina's family members was 'inconsequential to the ultimate nondisability determination' in the context of the record as a whole."). As in *Molina*, Mr. Stump's observations "did not describe any limitations beyond those [the Claimant] herself described, which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons." *Id.* Therefore, "the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination," and thus any such error was not prejudicial. *Id.*

**CONCLUSION**

For the foregoing reasons, the ALJ's findings are supported by substantial evidence and free of prejudicial error.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter judgment accordingly.

Dated this 23rd day of June, 2017.

*/s/ G. Murray Snow*
Honorable G. Murray Snow
United States District Judge